ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| OFICINA DE ÉTICA GUBERNAMENTAL<br><br>Recurrida<br><br>v.<br><br>CARLOS ANDÚJAR ROJAS<br><br>Recurrente | TA2025RA00032 | *Revisión Judicial* procedente de la Oficina de Ética Gubernamental<br><br>Caso Núm. 24-07<br><br>Sobre: Violación al Artículo 4.2, Incisos (b), (r) y (s) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, hoy 11 de septiembre de 2025.

Comparece la parte querellada y recurrente, el Sr. Carlos Andújar Rojas (señor Andújar Rojas), quien solicita la revisión de la *Resolución* emitida el 29 de mayo de 2025, notificada al día siguiente, por la parte querellante y recurrida, Oficina de Ética Gubernamental (OEG). En la aludida determinación administrativa, la OEG acogió en su totalidad el *Informe de la Oficial Examinadora*. En consecuencia, resolvió que el recurrente incurrió en la violación de los incisos (b) y (r) del Artículo 4.2 de la Ley Núm. 1-2012, *infra*. Por ello, le impuso una multa administrativa de $2,500.00 por cada violación, para un total de $5,000.00; y una sanción de restitución ascendente a $4,382.86. La suma global totalizó $9,382.86.

Anticipamos que, por los fundamentos que expondremos, confirmamos la decisión administrativa.

**I.**

La presente causa se inició el 25 de agosto de 2023, ocasión en que la OEG presentó una *Querella* contra el señor Andújar Rojas.[1] Alegó que el

---

[1] Apéndice del recurso, Anejo 2.

querellado utilizó indebidamente tres vehículos oficiales,[2] asignados las veinticuatro (24) horas de los siete (7) días de la semana, durante los años 2017 a 2022 —mientras fungió como rector del Recinto de Arecibo de la Universidad de Puerto Rico (UPR)— para trasladarse ida y vuelta entre su residencia y el Recinto de Arecibo de la UPR, incluyendo fines de semana y días festivos. Ello, en contravención de la Ley Núm. 60-2014, *infra*, y la reglamentación de la UPR, en referencia a la Certificación Núm. 35 (2014-2015), *infra*. A esos efectos, la OEG imputó al querellado la violación de los incisos (b), (r) y (s) del Artículo 4.2 de la Ley Núm. 1-2012, *infra*. Por ello, la querellante solicitó la restitución de los gastos de peaje, gasolina y reparaciones incurridos, así como la imposición de sanciones civiles, al palio del Artículo 4.7 (c) de la Ley Núm. 1-2012, *infra*.

El señor Andújar Rojas instó *Contestación a Querella* el 12 de septiembre de 2023.[3] Negó haber incurrido en las violaciones imputadas. Sostuvo que el uso de los vehículos fue conforme con las disposiciones legales y reglamentarias atinentes. Planteó que la UPR era un ente autónomo, por lo que la Ley Núm. 60-2014, *infra*, no aplicaba a su caso. Arguyó que, por virtud de la Certificación Núm. 35 (2014-2015), en su Artículo VIII (B), *infra*, estaba autorizado el uso que reconoció haber dado a los vehículos. Añadió también que éstos fueron utilizados durante las emergencias del huracán María y la pandemia del COVID-19, por lo que el uso estaba justificado.

Como parte del trámite administrativo, se sometió conjuntamente el *Informe de conferencia con antelación a la audiencia*.[4] Del documento se desprende que los contendientes **estipularon los siguientes trece (13) hechos no controvertido**s:

---

[2] Toyota Sienna (HSU-450) desde agosto de 2017 a julio de 2020; Ford Escape (JKQ-265) desde agosto de 2020 a julio de 2021; y Chevrolet Traverse (JLG-468) desde el 24 de junio de 2021 al 22 de septiembre de 2021 y 7 de febrero de 2022 al 11 de abril de 2022; además, Exhibits 5-6.
[3] Apéndice del recurso, Anejo 3.
[4] Apéndice del recurso, Anejo 4.

1. Para el periodo entre el mes de julio de 2017 al mes de abril de 2022 Carlos Andújar Rojas residió en la […], Toa Alta, Puerto Rico.

2. El señor Carlos Andújar Rojas ocupó el puesto de Rector de la Universidad de Puerto Rico en Arecibo desde el 7 de julio de 2017 hasta mediados de octubre de 2023.

3. **El puesto de rector constituye un nombramiento de confianza no docente**.

4. La designación de Carlos Andújar Rojas como Rector de la UPR-A implicó un cambio en la clase de servicio de docente enseñanza a docente administrativo y en el salario recibido (de $6,783.00 a $8,510.70).

5. La UPR-A es titular del vehículo Toyota Sienna, tablilla HSU-540.

6. La UPR-A es titular del vehículo Ford Escape, tablilla JKQ-265.

7. La UPR-A es titular del vehículo Chevrolet Traverse, tablilla JLG-468.

8. El señor Carlos Andújar Rojas tuvo asignado 24 horas al día y 7 días a la semana el vehículo Toyota Sienna, tablilla HSU-540 desde agosto de 2017 a julio de 2020.

9. El señor Carlos Andújar Rojas tuvo asignado 24 horas al día y 7 días a la semana el vehículo Ford Escape, tablilla JKQ-265 desde agosto de 2020 a julio de 2021.

10. El señor Carlos Andújar Rojas tuvo asignado 24 horas al día y 7 días a la semana el vehículo Chevrolet Traverse, tablilla JLG-468 desde el 24 de junio al 22 de septiembre de 2021 y desde el 7 de febrero al 11 de abril de 2022.

11. El señor Carlos Andújar Rojas **utilizó el vehículo Toyota Sienna, tablilla HSU-540 para asistir al trabajo y regresar a su hogar**.

12. El señor Carlos Andújar Rojas **utilizó el vehículo Ford Escape, tablilla JKQ-265 para asistir al trabajo y regresar a su hogar**.

13. El señor Carlos Andújar Rojas **utilizó el vehículo Chevrolet Traverse, tablilla JLG-468 para asistir al trabajo y regresar a su hogar**. (Énfasis nuestro).

Además, las partes acordaron la **admisión de vasta prueba documental**, producto del procedimiento de descubrimiento de prueba.[5]

---

[5] Se estipularon los siguientes documentos:
   1. Documentos Autoexpreso recibidos en el AIPA/OEG el 1 de noviembre de 2022.
   2. Documentos Autoexpreso recibidos en el AIPA/OEG el 16 de septiembre de 2022.
   3. Certificación suscrita por Sandra M. De Jesús Quiñones el 15 de febrero de 2022 y anejos (Certificación de empleo del querellado y Certificación número 87, 1988-1989).
   4. Producción de información y documentos remitida por Sandra M. De Jesús Quiñones el 8 de agosto de 2022.
      a. Certificación de empleo y anejos de Carlos Andújar Rojas
      b. Certificación de empleo y anejos de Héctor Pérez González
      c. Certificación de empleo y anejos de Fernando González Machado
   5. Certificación suscrita por Héctor Pérez González el 8 de agosto de 2022. Incluye Certificación de uso de vehículo de motor asignado al rector, Certificación lista de

Así las cosas, el 2 de mayo de 2024, la OEG presentó una *Solicitud de resolución sumaria*.[6] Apoyada esencialmente en la evidencia documental convenida,[7] la querellante acogió las trece (13) estipulaciones y adicionó sesenta y nueve (69) determinaciones fácticas (14-82), en general, relacionadas con el uso detallado de los tres vehículos, por parte del señor Andújar Rojas, durante el periodo señalado. Por igual, reiteró el uso

---

vehículos oficiales UPRA 2021; Certificación Uso por Junta de Gobierno y Copia de licencia de motor Ford Escape 2020.

6. Certificaciones suscritas por Héctor Pérez González el 25 de octubre de 2022. Incluye 5 Certificaciones.

7. Producción de información y documentos remitida por Héctor Pérez González del 10 de julio de 2023. Incluye 8 certificaciones y sus anejos.

8. Certificaciones suscritas por Héctor Pérez González del 21 de diciembre de 2022. Incluye 9 certificaciones y sus anejos.

9. Producción de información y documentos del 1 de noviembre de 2022 remitida por la Dra. Julitza Arroyo Vargas, Directora de Recursos Humanos de la Universidad Central de Bayamón. Incluye contratos suscritos y carga académica correspondiente.

10. Certificación suscrita por Edwin Pagán Meléndez el 23 de agosto de 2022.

11. Carta Circular ASG Núm. 2022-02 del 10 de febrero de 2022.

12. Reglamento Núm. 9265 del 15 de marzo de 2021 de la Universidad de Puerto Rico, Certificación Núm. 65 (2020-2021) *Reglamento de Gastos de Viaje de la Universidad de Puerto Rico.*

13. Certificación suscrita el 21 de diciembre de 2023 por Sheila L. Ramos Manso sobre rectores como empleados no docentes de confianza.

14. Producción de información y documentos remitida por Sandra M. De Jesús Quiñones el 15 de diciembre de 2023.

   a. Certificación y documentos relacionados a la responsabilidad académica de Carlos Andújar Rojas entre el 20 de julio de 2017 al 20 de abril de 2022.

   b. Copias certificadas del Registro de Asistencia del Querellado desde el 20 de julio de 2017 al 20 de abril de 2022.

   c. Certificación y documentos relacionados a nombramiento de confianza.

15. Primer pliego de interrogatorio, Requerimiento de Admisiones y Solicitud de Producción de documentos remitido por la parte querellante.

16. Contestación a Primer pliego de interrogatorio, Requerimiento de Admisiones y Solicitud de Producción de documentos remitida por la parte querellada.

17. Comunicación cursada a la parte querellada al amparo de la Regla 34.1 de Procedimiento Civil (32A LPRA R.34.1).

18. Contestación de la parte querellada a la comunicación remitida al amparo de la Regla 34.1 de Procedimiento Civil (32A LPRA R.34.1).

19. Primer pliego de interrogatorio, Requerimiento de Admisiones y Solicitud de Producción de documentos remitido por la parte querellada.

20. Contestación a Primer pliego de interrogatorio, Requerimiento de Admisiones y Solicitud de Producción de documentos remitida por la parte querellante.

21. Memo[rando] suscrito por Ramon A. Torres Santiago el 28 de julio de 2021, titulado: *Uso de vehículo oficial de la UPRA desde la perspectiva de salud y seguridad.*

[6] Apéndice del recurso, Anejo 5.

[7] Debemos mencionar que varias piezas de la evidencia documental anejada a la petición sumaria, según sometida <u>posteriormente</u> por el señor Andújar Rojas, en cumplimiento de nuestras *Resoluciones* de 8 y 10 de julio de 2025, resultan **ilegibles**. Véanse, entradas 5, 7 y 8 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC). En particular, son incomprensibles múltiples pliegos que se relacionan con los cargos en las estaciones de peaje en el Autoexpreso.

indebido de fondos públicos; y expuso que, ante la ausencia de controversias sobre hechos sustanciales, procedía la adjudicación abreviada.

El señor Andújar Rojas se opuso a la resolución sumaria.[8] Abogó por la existencia de controversias medulares, en alusión a las leyes y reglamentos que aplicaban a la UPR, los cuales, según él, permitían el uso de los vehículos de motor por la figura del rector. Además, el querellado acotó sobre la ausencia de evidencia directa, clara, robusta y convincente, tendente a demostrar que, en los viajes imputados, no se encontraba en funciones oficiales. Señaló que era a la OEG a quien correspondía el peso de la prueba de las alegadas violaciones éticas. Afirmó también que el uso de los vehículos fue como parte de sus funciones rectorales.

En respuesta, la OEG replicó.[9] En síntesis, manifestó que el querellado se contradecía, toda vez que había admitido el uso de los vehículos para trasladarse ida y vuelta entre su hogar y el trabajo, lo cual no constituía una función oficial. Enfatizó en la falta de evidencia del querellado para sostener sus defensas y controvertir los hechos materiales imputados y probados en la petición sumaria. Persistió en la ausencia de controversias de hechos que impidieran la adjudicación por la vía sumaria.

Ponderadas las posturas de los litigantes, el 30 de mayo de 2025, el Sr. Luis Pérez Vargas, Director de la OEG, notificó la *Resolución* impugnada.[10] En ésta, adoptó íntegramente el *Informe de la Oficial Examinadora*, Lcda. Evelyn Almodóvar Pérez.[11] Por consiguiente, justipreció que el señor Andújar Rojas incurrió en la violación de los incisos (b) y (r) del Artículo 4.2 de la Ley Núm. 1-2012, *infra*. A su vez, la funcionaria desestimó y archivó las imputaciones de violación del inciso (s) del aludido estatuto.[12]

---

[8] Apéndice del recurso, Anejo 6.
[9] Apéndice del recurso, Anejo 7.
[10] Apéndice del recurso, Anejo 1.
[11] Apéndice del recurso, Anejo 8.
[12] La referida disposición legal desestimada establece lo siguiente: "Un servidor público no puede llevar a cabo una acción que ponga en duda la imparcialidad e integridad de la función gubernamental". 3 LPRA sec. 1857a (s).

Insatisfecho, el señor Andújar Rojas acudió oportunamente ante este foro intermedio y señaló la comisión de los siguientes errores:

**PRIMER ERROR** ERRÓ LA OEG AL ACOGER EL INFORME DEL OFICIAL EXAMINADOR A PESAR DE QUE EN ÉSTE NO SE CONSIDERÓ LAS DEFENSAS LEVANTADA.

**SEGUNDO ERROR** ERRÓ LA OEG AL EMITIR UNA RESOLUCIÓN SUMARIA LA CUAL ES IMPROCEDENTE EN DERECHO Y VIOLA LAS GARANTÍAS MÍNIMAS DEL DEBIDO PROCESO DE LEY.

**TERCER ERROR** ERRÓ LA OEG AL CONCLUIR QUE EN ESTE PROCEDIMIENTO ATENDIDO SUMARIAMENTE QUEDÓ DEMOSTRADO CON EVIDENCIA CLARA, ROBUSTA Y CONVINCENTE QUE EL QUERELLADO INFRINGIÓ EL INCISO (B) Y (R) DEL ARTÍCULO 4.2, SUPRA.

**CUARTO ERROR** ERRÓ LA OEG AL APLICAR INCORRECTAMENTE LA LEY Y DISPONER SUMARIAMENTE LA QUERELLA NÚM. 24-07 A PESAR DE QUE DE LAS ESTIPULACIONES Y LA PRUEBA INCONTROVERTIDA SURGE QUE PARA LAS FECHAS EN QUE SE UTILIZARON LOS VEHÍCULOS LE ERA DE APLICACIÓN EL INCISO B, DEL ARTÍCULO VIII DE LA CERTIFICACIÓN 35-2014.

Luego de varios incidentes interlocutorios, la OEG presentó su *Alegato en oposición*. Con el beneficio de ambas comparecencias, procedemos a resolver.

## II.

### A. Revisión Judicial

Revisamos la *Resolución* en el caso del epígrafe, al palio del Artículo 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, *Ley de la judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24-25r (Ley Núm. 201-2003), el cual dispone en lo pertinente que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho [...] las decisiones finales de los organismos y agencias administrativas". 4 LPRA sec. 24u; además, Art. 4.006 de la Ley Núm. 201-2003, 4 LPRA sec. 24y. En consonancia, la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601-9713, establece un procedimiento uniforme de revisión judicial a la acción tomada por un ente gubernamental al adjudicar un caso administrativo. En particular, la Sección 4.5 de la LPAUG,

3 LPRA sec. 9675, que versa sobre el **alcance de la revisión judicial**, estatuye que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho.

En esencia, examinamos que **las determinaciones fácticas sean cónsonas con la totalidad del expediente administrativo** y que el ente gubernamental haya realizado **una aplicación o interpretación correcta de las leyes o reglamentos** que se le ha encomendado administrar. Asimismo, auscultamos que **el organismo haya actuado dentro de los parámetros de su ley habilitadora**, libre de arbitrariedades y en observancia a los derechos constitucionales fundamentales. Véase, *Torres Rivera v. Policía de PR,* 196 DPR 606, 628 (2016). Por lo tanto, al momento de revisar la valoración y razonabilidad de las decisiones administrativas adoptadas por las agencias del poder ejecutivo, los tribunales tenemos la obligación de ejercer un juicio independiente de las disposiciones legales para determinar si una agencia ha actuado o no dentro de los límites de su autoridad estatutaria, incluso en los casos de ambigüedad legislativa. Véase, *Loper Bright Enterprises v. Raimondo,* 144 S.Ct. 2244 (2024); 603 US __ (2024); *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR __ (2025).[13] Claro, según ha pautado el Tribunal Supremo federal y ha refrendado nuestro alto foro, las interpretaciones y los dictámenes administrativos —realizados por virtud del cumplimiento de un deber oficial y basados en su experiencia especializada— pueden constituir un cuerpo de experiencia y un juicio informado ("body of experience and informed judgment") al que los foros revisores y las partes pudiéramos recurrir en cuestiones jurídicas. *Loper Bright Enterprises v. Raimondo, supra,* pág. 2259; *Vázquez v. Consejo de Titulares, supra.* El peso persuasivo de la

---

[13] Véase, *Opinión* de 21 de mayo de 2025 (Hon. Kolthoff Caraballo).

determinación administrativa va a depender de la minuciosidad en su consideración, de la validez de su razonamiento, así como de su congruencia con pronunciamientos anteriores y posteriores. Véase, *Skidmore v. Swift & Co.*, 323 US 134, 139-140 (1944), citado con aprobación en *Loper Bright Enterprises v. Raimondo, supra.* Es decir, las interpretaciones de las agencias "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía". *Vázquez v. Consejo de Titulares, supra.* Así, pues, **el norte al ejercer nuestra facultad revisora es el criterio de razonabilidad**. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127 (2019); *Torres Rivera v. Policía de PR*, *supra*, pág. 626; *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 1033, 1042-1043 (2012); además, *Vázquez v. Consejo de Titulares, supra.*[14]

### B. Oficina de Ética Gubernamental

La Ley Núm. 1 de 3 de enero de 2012, *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, 3 LPRA secs. 1854-1860. (Ley Núm. 1-2012), cumple con el reclamo ciudadano de que los servidores públicos presenten "una imagen intachable y libre de cualquier conflicto, sin importar la Rama del Gobierno en la cual se desempeñan". *Exposición de Motivos*, Ley Núm. 1-2012. El estatuto propende a "un servicio público íntegro, con valores, que mantenga la confianza en sus instituciones y asegure la transparencia en las funciones oficiales". *OEG v. Martínez Giraud*, 210 DPR 79, 91 (2022). Por ello, el estatuto crea el ente gubernamental, con el fin de "promover y preservar la integridad de los servidores públicos y de las instituciones de nuestro Gobierno". *OEG v. Cordero, Rivera*, 154 DPR 827, 847 (2001).

En lo que compete a este caso, el Artículo 4.2, *Prohibiciones éticas de carácter general*, de la Ley Núm. 1-2012, 3 LPRA sec. 1857a, proscribe, en lo pertinente, lo siguiente:

---

[14] Véase, *Opinión de Conformidad* (Hon. Estrella Martínez).

.  .  .  .  .  .  .  .

(b) **Un servidor público no puede utilizar** los deberes y las facultades de su cargo ni **la propiedad** o los fondos públicos **para obtener, directa o indirectamente**, **para él** o para una persona privada o negocio, **cualquier beneficio** que no esté permitido por ley.

.  .  .  .  .  .  .  .

(r) **Un servidor público no puede omitir el cumplimiento de un deber impuesto por ley** o reglamento, si con ello **ocasiona la pérdida de fondos públicos** o produce daño a la propiedad pública. (Énfasis nuestro).

.  .  .  .  .  .  .  .

El Tribunal Supremo ha pautado que, para que se configure una infracción del **inciso (b)** del referido articulado, es necesario la concurrencia de estos cuatro requisitos: (1) que se trate de un funcionario o empleado público; (2) que éste haya utilizado sus deberes, las facultades de su cargo, propiedad o fondos públicos; (3) con el fin de proporcionarse a sí mismo, a algún miembro de su familia o a otra persona; (4) alguna ventaja, beneficio o privilegio. *Pueblo v. Arlequín Vélez*, 204 DPR 117, 155 (2020); *OEG v. Rodríguez*, 159 DPR 98, 134 (2003). Al respecto, el propio estatuto define los términos *servidor público* y *beneficio*. Veamos.

.  .  .  .  .  .  .  .

(i) **Beneficio – cualquier provecho, utilidad**, lucro o ganancia, sin limitar el término a una ganancia pecuniaria o material, sino que denota **cualquier forma de ventaja**. (Énfasis nuestro). Art. 1.2, *Definiciones*, inciso (i) de la Ley Núm. 1-2012, 3 LPRA sec. 1854 (i).

.  .  .  .  .  .  .  .

(gg) **Servidor público – persona en el Gobierno que interviene en la formulación e implantación de la política pública** o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. [...] (Énfasis nuestro). Art. 1.2, *Definiciones*, inciso (gg) de la Ley Núm. 1-2012, 3 LPRA sec. 1854 (gg).

.  .  .  .  .  .  .  .

En cuanto al **inciso (r)** del Artículo 4.2, la comisión de la infracción exige: (1) que se trate de un funcionario o empleado público; (2) que el mismo esté obligado, mediante ley o reglamento, a cumplir con un determinado deber, cuyo cumplimiento ha omitido; y (3) que dicha omisión haya causado la pérdida de fondos del erario o un daño a la propiedad pública.

A tono con lo anterior, el Artículo 4.7, *Sanciones y penalidades*, de la Ley Núm. 1-2012, 31 LPRA sec. 1857f, preceptúa distintas sanciones y penalidades —administrativas, civiles y criminales— para los servidores públicos que actúen en contravención a lo dispuesto en el estatuto, en los reglamentos, las órdenes o las normas promulgadas a su amparo. En aquellos casos como el presente, en los que aplique una **acción administrativa**, la persona que incurra en alguna violación puede ser castigada por la Dirección Ejecutiva con **una multa administrativa por cada infracción**, que no excederá de veinte mil (20,000) dólares y enfrentar, por ejemplo, **una orden de restitución**. Véase, Art. 4.7 (c) de la Ley Núm. 1-2012, 3 LPRA sec. 1857f (c).

Finalmente, en armonía con la suficiencia de la prueba de los casos disciplinarios, debemos puntualizar que los procedimientos ante la OEG requieren que la evidencia sea aquilatada a la luz del estándar de **prueba clara, robusta y convincente**. Este referente evidenciario es uno intermedio de suficiencia de la prueba; más exigente que el comúnmente aplicado estándar de *preponderancia de la prueba* en casos civiles y menos riguroso que la prueba establecida en casos criminales de *más allá de duda razonable*. La prueba clara, robusta y convincente se refiere a "aquella evidencia que produce en un juzgador de hechos **una convicción duradera de que las contenciones fácticas son altamente probables**". (Énfasis nuestro). *OEG v. Martínez Giraud, supra*, págs. 93-94.

### C. Ley Uniforme de Vehículos Oficiales

La Ley Núm. 60 de 30 de mayo de 2014, *Ley Uniforme de Vehículos Oficiales del Estado Libre Asociado de Puerto Rico*, 3 LPRA secs. 9091-9095 (Ley Núm. 60-2014), "tiene el firme propósito de extrapolar la realidad económica a nuestra administración pública y concienciar sobre la utilización responsable de los recursos públicos". *Exposición de Motivos*, Ley Núm. 60-2014. **El estatuto proscribe a los jefes de agencia y funcionarios públicos a utilizar cualquier vehículo oficial una vez concluida la jornada laboral**, independientemente de que la unidad se haya adquirido mediante

compraventa o arrendamiento. La prohibición se extiende a cualquier departamento, dependencia, instrumentalidad, o **corporación pública**, de la Rama Ejecutiva. Art. 3 de la Ley Núm. 60-2014, 3 LPRA sec. 9092.

El Artículo 2 de la Ley Núm. 60-2014 define el término *funcionario público* como aquellas personas que ocupan cargos en el Gobierno de Puerto Rico y que intervienen en la formulación e implantación de la política pública. Además, define la *jornada laboral* como el periodo destinado a rendir labores en una agencia, que no excluye la extensión de más de ocho (8) horas diarias y los fines de semana. Art. 2 de la Ley Núm. 60-2014, 3 LPRA sec. 9091 (c).

Por consiguiente, como medida de control, **una vez concluida la jornada laboral, el jefe de agencia o funcionario público debe entregar el vehículo oficial al ente gubernamental**. La persona encargada del vehículo debe anotar en una **bitácora**, la hora de salida y llegada, el millaje del vehículo oficial al momento de la salida y al momento de su llegada, así como un **resumen del historial de los viajes realizados en el día**. Art. 4 de la Ley Núm. 60-2014, 3 LPRA sec. 9093. Si una persona incurre en alguna violación, entonces, debe satisfacer una multa administrativa de entre de $1,000.00 a $5,000.00 por cada infracción; "entendiéndose que cada día que subsista la infracción se considerará como una violación independiente". Art. 6 de la Ley Núm. 60-2014, 3 LPRA sec. 9095. Huelga mencionar que del propio estatuto surge un **listado taxativo de cargos gubernamentales**, a cuyos incumbentes se les exime del cumplimiento de los preceptos antes descritos. A saber, se excluyen, por ejemplo, el Gobernador, los Secretarios de Estado y Justicia, el Fiscal General, así como los Comisionados de los Negociados de Bomberos y Manejo de Emergencias, entre otros funcionarios públicos. Art. 5 de la Ley Núm. 60-2014, 3 LPRA sec. 9094.

### D. Universidad de Puerto Rico

La Ley Núm. 1 de 20 de enero de 1966, *Ley de la Universidad de Puerto Rico*, 18 LPRA secs. 601-614 (Ley Núm. 1-1966), establece que la UPR es una **corporación pública**, gobernada por una Junta de Gobierno. Arts. 1 y 3 de la Ley Núm. 1-1966, 18 LPRA secs. 601-602. En cuanto a la figura del *rector*,

el estatuto dispone que éste **ejercerá la autoridad administrativa y académica dentro del ámbito de su respectiva unidad institucional**. Art. 7 (B) de la Ley Núm. 1-1966, 18 LPRA sec. 606 (B).

En aquello relacionado al caso de autos, el 8 de diciembre de 2014, la UPR aprobó la Certificación Núm. 35 (2014-2015), *Reglamento para vehículos y otros medios de transportación propiedad de la Universidad de Puerto Rico*. El Artículo II, *Base Legal,* expresa que **la normativa se promulga en virtud de la Ley Núm. 1-1966, *supra*, y la Ley Núm. 60-2014, *supra*.**

De otro lado, el Artículo VIII, *Uso de los Vehículos y Otros Medios de Transportación,* reza como sigue:

A. **Los vehículos serán utilizados únicamente para asuntos oficiales**. No se permitirá su uso para fines privados o personales de los funcionarios o empleados de la Universidad, así como de cualquier otra persona particular.

B. **La Junta de Gobierno dispondrá en forma separada de este Reglamento la autorización y uso del automóvil para** el Presidente, **los Rectores** de cada Unidad Institucional y el Presidente de la Junta de Gobierno y cualquier otro funcionario del sistema universitario.

. . . . . . . .

F. **El uso de los vehículos y otros medios de transportación se limitará al horario regular de trabajo de la oficina o dependencia que los utilice**, disponiéndose que la oficina a cargo del control podrá autorizar el uso fuera de ese horario cuando las necesidades del servicio lo amerite.

. . . . . . . .

K. **Todos los vehículos y otros medios de transportación se guardarán en el garaje o área designada por la oficina a cargo del control de vehículos**, excepto en aquellos casos en que por carencia de instalaciones, por exigencias del servicio o por situaciones de emergencia tengan que permanecer fuera de dicho sitio. En estos casos **se gestionará autorización previa del director de la oficina a cargo del control o de un funcionario autorizado, o se cursará notificación a esta oficina cuando se trate de una emergencia**. Se procurará en todo momento que el sitio a utilizarse ofrezca protección y seguridad para éstos.

L. La oficina a cargo del control de vehículos preparará **informes diarios del uso de los vehículos y otros medios de transportación**, indicando las millas recorridas y/o los viajes realizados. Se preparará, además, un **informe de los gastos de combustible**, lubricantes, costos de piezas de repuesto y accesorios adquiridos para cada vehículo y los costos de labor en las reparaciones, así también como un **informe sobre el gasto de servicio de auto expreso**, según aplique. Cuando el vehículo haya sido asignado a una oficina distinta a la oficina a

cargo del control, **el informe lo preparará semanalmente la persona responsable por dicho vehículo y lo entregará a la Oficina de Control de su unidad**. Además, colaborará en la ejecución del Plan de reparaciones preventivas y de inspecciones periódicas. En adición, **cada medio de transportación tendrá una bitácora de viaje en donde cotejarán las millas antes y después de cada viaje**, se anotarán las observaciones y condiciones en que se encuentra el vehículo. (Énfasis nuestro).

.    .    .    .    .    .    .    .

Esbozado el marco jurídico, procedemos a aplicarlo a las cuestiones planteadas.

### III.

En el primer señalamiento de error, el señor Andújar Rojas alega que en el *Informe de la Oficial Examinadora* no se atendieron las defensas levantadas. Argumenta que el proceso sumario no acogió ciertas alegaciones afirmativas que no fueron refutadas. En particular, menciona que a la OEG le correspondía el peso de la prueba y que la agencia no presentó evidencia clara, robusta y convincente de si, en efecto, los vehículos fueron utilizados para uso personal. Invoca, además, las presunciones específicas del ordenamiento probatorio en cuanto a que *una persona es inocente de delito o falta* y sobre que *la ley ha sido acatada.*[15] No le asiste la razón.

Ante la falta de una impugnación sostenida con evidencia de las determinaciones fácticas del *Informe de la Oficial Examinadora* y el examen de la totalidad del expediente administrativo, acogemos los enunciados según expuestos. Al revisar el *Informe* surge que la funcionaria sí consideró las contenciones del recurrente. En especial, auscultó alegaciones como que el vehículo era una herramienta de trabajo y la supuesta ausencia de evidencia directa que demostrara que los vehículos no se utilizaron mientras ejercía funciones en representación de la UPR. Ambas cuestiones fueron derrotadas con las propias admisiones del señor Andújar Rojas, sobre que utilizó los vehículos para transportarse entre su residencia en Toa Alta y la UPR en Arecibo, sumado al hecho reconocido de que no llevó una bitácora

---

[15] Véase, Reglas de Evidencia, 32 LPRA Ap. VI, R. 304 (1) (31).

de sus múltiples viajes,[16] así como la ausencia de prueba para fundamentar tales defensas. De hecho, la Oficial Examinadora acotó que **el traslado de un funcionario, desde su residencia hacia su lugar de trabajo, no es un asunto oficial, sino personal**. Nótese que el expediente administrativo adolece de evidencia alguna tendente a demostrar qué funciones el recurrente realizó en su residencia, por lo que la defensa de que sus funciones transcurrían las veinticuatro (24) horas de los siete (7) días de la semana es inmeritoria. Esto porque, si bien el recurrente debía tener disponibilidad para trabajar fuera del horario laboral, su jornada era de 37.5 horas semanales.[17] Tan es así que, durante el periodo que nos atañe, pudo asumir un segundo empleo en otra institución universitaria ajena a la UPR.[18]

La defensa del uso de los vehículos, presuntamente justificado por las emergencias del huracán María en 2017 y la pandemia del COVID-19 de 2020, fue descartada por la juzgadora de hechos.[19] Ello así, porque el recurrente se limitó a expresar bajo juramento que dichas gestiones oficiales fueron "reuniones de trabajo con personal del Recinto de Arecibo y mi equipo de trabajo, con rectores de otros recintos y el Presidente de la UPR, y personas de otras agencias en representación del [R]ecinto de Arecibo", con el fin de que "el impacto en los servicios se afectara lo menos posible...". Por ello, la Oficial Examinadora coligió razonablemente que la atención de estas situaciones de emergencia ocurrió en el campus universitario.[20]

Con relación a las presunciones evidenciarias aludidas, de entrada, debemos apuntar que, en los procesos administrativos, el ordenamiento probatorio opera sólo en virtud de lograr una solución rápida, justa y

---

[16] Véase, *Informe de la Oficial Examinadora*, a sus págs. 5, acápite 14; 8, acápite 28.

[17] Véase, *Informe de la Oficial Examinadora*, a sus págs. 4, acápite 5; y 20-21; además, Exhibit 14C *Certificación* de 15 de diciembre de 2023.

[18] Véase, *Informe de la Oficial Examinadora*, a su pág. 5, acápites 8-10.

[19] Las hojas de asistencia del recurrente especifican el receso por los huracanes Irma y María; véase, Exhibit 14B.

[20] Véase, *Informe de la Oficial Examinadora*, a su pág. 5, acápites 14-16. Además, Exhibit 15 *Interrogatorio*, pág. 638, acápites 9 y 10; y Exhibit 16 *Contestación al interrogatorio*, pág. 649, acápites 9 y 10.

económica del procedimiento. Sec. 3.13 (e) de la LPAUG, 3 LPRA sec. 9653 (e). En ese sentido, no podemos considerar una aplicación rigurosa de las presunciones específicas aducidas. Nótese, además, que los referidos enunciados no fueron expuestos como defensas en la alegación responsiva del recurrente ni elaborados en el escrito de oposición a la resolución sumaria. Tampoco el señor Andújar Rojas sometió oportunamente una enmienda a su contestación ni una dúplica a la réplica de la OEG. Como se sabe, este tribunal intermedio puede y debe abstenerse de adjudicar sobre cuestiones no planteadas ante el foro revisado. *Scotiabank v. Sucn. Quiñones et al.*, 206 DPR 904, 930 (2021); *ELA v. El Ojo de Agua Development*, 205 DPR 502, 531 (2020); *E.L.A. v. Northwestern Selecta*, 185 DPR 40, 98 (2012). En este caso, ni el dictamen administrativo impugnado ni el informe acogido aluden en absoluto a la adopción de presunción alguna en contra ni a favor del recurrente.

En el segundo señalamiento de error, el señor Andújar Rojas plantea que la OEG incidió al emitir una resolución sumaria, por ser improcedente en derecho y violatoria de las garantías del debido proceso de ley. En su exposición, el recurrente expresa que no procedía la vía sumaria. En específico, aduce que, en su *Oposición…* (alegaciones 14-81),[21] sostuvo la existencia de controversias en cuanto a los hechos esgrimidos por la OEG. En dichas alegaciones responsivas, en síntesis, el recurrente arguyó que, si bien era cierto que utilizó el vehículo entre su residencia y la UPR de Arecibo, lo hizo como parte de las funciones de su cargo, como profesor y rector, en representación de la UPR y en horario laboral, ya que el vehículo asignado era una herramienta de trabajo. Igualmente, de sus respuestas surge claramente la admisión de que no llevó un registro de los viajes en una bitácora. Del mismo modo, reconoció haber ejercido como conferenciante durante horarios nocturnos, sabatinos y sin horarios establecidos, en un segundo empleo parcial en la Universidad Central de Bayamón, durante el

---

[21] El recurrente no se opuso al hecho 82 propuesto por la OEG de que las actuaciones y la conducta del señor Andújar Rojas fueron objeto de discusión pública.

periodo en controversia.[22] Finalmente, insistió en que el ordenamiento de la institución universitaria permitía el uso brindado a los vehículos asignados; en resumen, que como rector de la UPR estaba eximido de la Ley Núm. 60-2014, *supra*.

Como cuestión de umbral, la adjudicación sumaria está permitida en los procesos administrativos. Véase, Sec. 3.7 (b) de la LPAUG, 3 LPRA sec. 9647 (b). El estatuto uniformador sólo veda la resolución sumaria cuando "(1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede". *Id.* Ciertamente, la resolución por la vía sumaria es compatible con la solución rápida, justa y económica que aspira el ordenamiento administrativo. Sec. 1.2 de la LPAUG, 3 LPRA sec. 9602. Asimismo, la reglamentación de la OEG contempla el mecanismo procesal.[23]

De una revisión *de novo* de la petición, el escrito en oposición, la réplica y la amplia documentación de apoyo, podemos colegir que, en el presente caso, no existían controversias reales de hechos materiales y esenciales que fueran necesarias dirimir en una vista administrativa. Además de los hechos estipulados y las alegaciones responsivas esgrimidas en la *Oposición…*, en los que constan medulares admisiones del recurrente, las determinaciones fácticas planteadas se asientan en prueba documental admisible y fehaciente. Por lo tanto, **las cuestiones a adjudicar resultaron ser de estricto derecho**; a saber: *si el recurrente incurrió o no en las violaciones imputadas, al ocasionar la pérdida de fondos del erario, por omitir*

---

[22] El recurrente negó que utilizara propiedad pública para transportarse al segundo empleo, sino que dejaba los vehículos oficiales en su casa y usaba uno privado. Véase, Exhibit 16 *Contestación al interrogatorio*, pág. 651, acápites 24-26.

[23] Refiérase al derogado Artículo 6.11, *Resolución sumaria*, del Reglamento Núm. 8231, *Reglamento sobre Asuntos Programáticos de la Oficina de Ética Gubernamental de Puerto Rico*, de 18 de julio de 2012 y efectivo el 16 de agosto de 2012; el cual fue anulado por el Reglamento Núm. 9641, de 7 de enero de 2025 y efectivo el 7 de febrero de 2025, *Reglamento sobre políticas de prevención y fiscalización de la Oficina de Ética Gubernamental de Puerto Rico*. La reglamentación vigente acoge, por igual, la resolución sumaria en el Artículo 7.10.

*el cumplimiento de un deber impuesto; y si éste obtuvo algún beneficio no permitido por ley al utilizar propiedad pública.* A esos efectos, debemos concluir que la OEG no estaba impedida de adjudicar sumariamente el caso ante su consideración.

En cuanto a las contenciones del recurrente relacionadas con el peso y el estándar de la prueba con respecto a las violaciones imputadas, lo abordaremos conjuntamente en la discusión de los errores tercero y cuarto. En éstos, el señor Andújar Rojas reitera que era a la OEG a la que le correspondía demostrar todos los elementos de las faltas, incluyendo los elementos subjetivos como la intencionalidad. Asevera que la determinación en su contra se basó en meras conjeturas, ya que los registros de peaje no demostraban por sí solos la omisión del recurrente en el cumplimiento del deber impuesto por ley y reglamento ni que ello acarreó la pérdida de fondos públicos. Por ello, razona que la OEG falló en demostrar de manera clara, robusta y convincente que incurrió en las faltas señaladas.

Añade, por último, que la recurrida erró en la aplicación de la ley, ya que la Certificación 151 (2021-2022) de 26 de mayo de 2022, que impuso a los rectores el cumplimiento con la Ley Núm. 60-2014, es posterior a la comisión de la conducta imputada. Establece que, en su caso, aplicaba el inciso (B) del Artículo VIII de la Certificación Núm. 35 (2014-2015), *supra,* el cual regulaba por separado el uso de vehículos por parte de los rectores. Dijo que ello era cónsono con la decisión del Departamento de Justicia,[24] el cual concluyó que el señor Andújar Rojas no incurrió en conducta delictiva, que implica intencionalidad, así como que correspondía a la UPR determinar si las funciones de un rector continuaban una vez éste llegara a su hogar.

Es menester aclarar que, toda vez que las imputaciones son de naturaleza administrativa, el aspecto de la *intencionalidad criminal* no es de aplicación. El Tribunal Supremo ha opinado consistentemente que, en procesos administrativos disciplinarios, particularmente en el contexto de

---

[24] Apéndice del recurso, Anejo 9.

funcionarios o empleados públicos sometidos a un procedimiento administrativo, "el hecho de que una persona haya sido juzgada y absuelta en un proceso penal no impide que se formulen y diluciden cargos administrativos en su contra por los mismos hechos que motivaron el caso penal". *Trib. Exam. Méd. v. Cañas Rivas*, 154 DPR 29, 37 (2001); *San Vicente v. Policía de P.R.*, 142 DPR 1 (1996); *Pagán Hernández v. U.P.R.*, 107 DPR 720 (1978); *Mundo v. Tribunal Superior*, 101 DPR 302 (1973); *Vélez Quiñones v. Srio. de Instrucción*, 86 DPR 755 (1962); *Cruz v. Garrido Morales*, 58 DPR 653 (1941).

En torno a si la OEG logró demostrar sumariamente, con prueba clara, robusta y convincente, los elementos de las faltas éticas tipificadas en los incisos (b) y (r) del Artículo 4.2 de la Ley Núm. 1-2012, *supra*, según imputadas al recurrente, respondemos en la afirmativa. Veamos.

Al evaluar los argumentos del recurrente, es esencial tomar en consideración dos cosas.

Primero, las normas reglamentarias esbozadas por virtud de la Certificación Núm. 35 (2014-2015), *supra*, tuvieron como **base legal** la Ley Núm. 60-2014, *supra*. Cual lo reseñado, el estatuto comprende una **lista taxativa** de funcionarios gubernamentales que están exentos de su cumplimiento. Por ende, la atribución *sua sponte* del recurrente de que a él no le aplica el **estatuto uniformador** sobre el uso de vehículos oficiales es incorrecto. **La adición de funcionarios públicos eximidos no procede mediante la reglamentación de las agencias, sino por voluntad legislativa**.[25] De hecho, su planteamiento desvirtuaría por completo el propósito de la Legislatura al aprobar dicha ley, pues trastocaría la uniformidad que aspira. Debido a su entera aplicación, precisamente, es que la UPR emitió la Certificación 151 (2021-2022) de 26 de mayo de 2022. La comunicación se limitó a aclarar, no a regular, que los rectores están

---

[25] Cabe señalar que recientemente la Ley Núm. 60-2014, *supra*, fue enmendada por la Ley Núm. 44 de 8 de julio de 2025 para adicionar al Ayudante General de Puerto Rico entre los funcionarios públicos exceptuados.

obligados a cumplir con la Ley Núm. 60-2014, *supra*. En particular, que deben **devolver diariamente el vehículo oficial al recinto al concluir la jornada laboral**; y enfatiza la **prohibición de transportarse desde y hacia su residencia**.[26]

Estimamos que la afirmación del recurrente de estar eximido del estatuto uniformador surge de una interpretación acomodaticia del inciso (B) del Artículo VIII, de la Certificación Núm. 35 (2014-2015), *supra*. El hecho que la UPR decidió disponer de forma separada la autorización y el uso de los vehículos asignados a los rectores, no implica de ninguna manera que estos funcionarios públicos hubieran podido utilizarlos para asuntos privados; ni estuvieran autorizados a trasladarse a sus residencias por conveniencia personal. Si aceptáramos el razonamiento del recurrente, deberíamos concluir que la norma hubiera sido nula. Es sabido que la ley siempre prevalece sobre los reglamentos, por lo que éstos no pueden estar en conflicto con el estatuto que los promulga. Es decir, "el texto de una ley jamás debe entenderse modificado o suplantado por el reglamentario, por lo que, de existir cualquier conflicto entre el texto de la ley y su reglamento, debe prevalecer el de la ley". *Yiyi Motors, Inc. v. E.L.A.*, 177 DPR 230, 248 (2009); *P.A.C. v. P.I.P.*, 169 DPR 775, 779 (2006); *Ex parte Irizarry*, 66 DPR 672, 676 (1946).

Segundo, es menester tener presente que, desde etapas tempranas del procedimiento, el señor Andújar Rojas **admitió y estipuló que utilizó los tres vehículos asignados para trasladarse, ida y vuelta, entre su residencia y la UPR en Arecibo**. Luego, **reconoció que no llevó un registro escrito de los viajes realizados**.[27]

---

[26] El documento intitulado *Uso de vehículo oficial de la UPRA desde la perspectiva de salud y seguridad* de 28 de julio de 2021 no descartaba que la residencia del rector se convirtiera en un lugar oficial de trabajo, pero en los siguientes casos: "si éste tiene que atender una situación de emergencia y tuviera que salir para llegar al colegio se considera una gestión oficial de trabajo debido a la naturaleza del cargo"; o "se dirige a una reunión en [otra] unidad del sistema"; o "se dirige a su casa a continuar trabajando"; o "sale del recinto para ir a una reunión". **La comunicación enfatiza que no es oficial si se utiliza el vehículo con fines privados o personales**. Exhibit 21.

[27] Véase, *Oposición a "Solicitud de resolución sumaria"*, acápite 70.

En este caso, nos persuade la postura de la recurrida acerca de que las controversias de este caso no se centran en el uso legítimo que el recurrente dio a los vehículos oficiales en el desempeño de sus funciones como rector,[28] sino sobre el uso personal ilegítimo que éste le dio para trasladarse desde su domicilio hacia su trabajo en la UPR Arecibo y viceversa, lo que está patentemente en contra de la política pública que decreta la Ley Núm. 60-2014, *supra*.[29] Ello así, porque **el desplazamiento entre los hogares y los lugares de trabajo de los servidores públicos no es parte de la jornada laboral**.

Nótese, además, que el recurrente fue nombrado rector interino el 20 de julio de 2017. Ahora, entre el 20 de julio de 2017 al 20 de abril de 2022, el señor Andújar Rojas también tuvo a su cargo **una carga académica de doce (12) créditos como profesor en la UPR de Arecibo**, que incluía horas de oficina.[30] Claro está, las funciones como profesor están desvinculadas de la rectoría; es decir, según lo estipulado por las partes, **el puesto de rector constituye un nombramiento de confianza, no docente**. Por consiguiente, el señor Andújar Rojas utilizó indebidamente los vehículos oficiales, no sólo al transportase ida y vuelta entre su residencia en Toa Alta y la UPR en Arecibo, sino que en un sinnúmero de estos viajes admitió que fue para ejercer funciones académicas vinculadas al puesto de profesor, no de rector; en otras, simplemente ni le constaba ni recordaba.[31] Lo anterior es independiente que tuviera asignados los medios de transporte durante las veinticuatro (24) horas de los siete (7) días de la semana. Es decir, el uso personal o como profesor, desvinculado de las funciones rectorales, está palmariamente proscrito por el ordenamiento atinente.

---

[28] Huelga mencionar que la Oficial Examinadora depuró las reclamaciones de la recurrida en su petición sumaria, quien inicialmente imputó al recurrente un gasto indebido ascendente a $18,961.90 entre peaje, combustible y reparaciones de los tres vehículos.
[29] Véase, *Alegato en oposición*, a sus págs. 19-20.
[30] Véanse, *Informe de la Oficial Examinadora*, a sus págs. 4-5, acápites 5-7; y *Certificación* de 15 de diciembre de 2023, Exhibit 14A.
[31] Exhibit 16 *Contestación al interrogatorio*, págs. 651-653.

El **inciso (b)** del Artículo 4.2 de la Ley Núm. 1-2012 dispone que "[1] [u]n servidor público [2] no puede utilizar [...] la propiedad o los fondos públicos [3] para obtener, directa o indirectamente, para él [...] [4] cualquier beneficio que no esté permitido por ley". El Artículo 3 de la Ley 60-2014, *supra*, prohíbe que los funcionarios públicos utilicen los vehículos oficiales fuera de horas laborales, incluyendo las corporaciones públicas, como la UPR.

En la causa de marras, no hay duda de que la UPR se autodenomina como una *corporación pública* y que el recurrente es un *servidor público*, conforme las definiciones estatuidas en la Ley Núm. 1-2012, *supra*, y la Ley Núm. 60-2014, *supra*.[32] Como rector, la Ley Núm. 1-1966 confirió al señor Andújar Rojas el ejercicio de la autoridad administrativa y académica en la UPR de Arecibo, por lo que intervenía en la formulación e implantación de su política pública. Además, el recurrente brindó servicios educativos como profesor en el periodo que nos atañe.

Como producto de sus admisiones, existe certeza de que el recurrente, entre el 3 de agosto de 2017 y 11 de abril de 2022, **ajeno a las funciones rectorales**, utilizó tres vehículos, propiedades públicas de la UPR, para trasladarse ida y vuelta entre su residencia y la UPR de Arecibo.[33] Estos viajes con fines privados fueron demostrados a través de los registros de Autoexpreso y las certificaciones de la UPR de Arecibo, que establecieron las fechas y rutas de viaje que el recurrente utilizó para llegar a su trabajo como docente y de regreso a su residencia y los correspondientes gastos en combustible y peaje. Por lo tanto, no solamente omitió devolver los vehículos cada día, como impone el estatuto uniformador, sino que los viajes ni siquiera estaban contenidos dentro de la jornada laboral como rector ni relacionados con dichas funciones.

Los traslados conllevaron el desembolso público de **$2,948.15 por concepto de pago de peajes y $1,434.71 en gastos de combustible**, para

---

[32] Véase, *Informe de la Oficial Examinadora*, a sus págs. 3-4, acápite 3.
[33] Véanse, Exhibits 14A, 14B y 16.

un total de **$4,382.86**.[34] Como resultado del uso prohibido a los tres vehículos, el recurrente se benefició al no tener que erogar de su peculio los gastos incurridos en ocasión de sus viajes privados. Aun cuando la Ley 60-2014, *supra*, establece sanciones por cada infracción; en este caso, al amparo del Artículo 4.7 de la Ley Núm. 1-2012, la OEG **multó administrativamente al recurrente en $2,500.00 por la infracción al inciso (b) del Artículo 4.2 de la Ley Núm. 1-2012,** *supra*.

En cuanto al **inciso (r)** del Artículo 4.2 de la Ley Núm. 1-2012, *supra*, se establece que "[1] [u]n servidor público [2] no puede omitir el cumplimiento de un deber impuesto por ley o reglamento, [3] si con ello ocasiona la pérdida de fondos públicos [...]".

En el caso presente, el Artículo 4 de la Ley Núm. 60-2014, *supra*, impone a la persona encargada de un vehículo oficial a anotar en una bitácora, la hora de salida y llegada, el millaje del vehículo, tanto al momento de la salida como a su llegada, así como un resumen del historial de los viajes realizados en el día. Empero, según las propias admisiones del señor Andújar Rojas, éste **no registró en una bitácora los quinientos treinta y seis (536) viajes, incluyendo festivos, sábados y domingos**.[35] Esta omisión del deber de registrar los viajes privados acarreó la pérdida de $4,382.86. En respuesta a la violación del inciso (r) del Artículo 4.2 de la Ley Núm. 1-2012, *supra,* al recurrente se le impuso otra **multa administrativa de $2,500.00 y la restitución de los fondos públicos de los que se benefició ilegalmente**.

Con relación a *quantum* probatorio, somos del criterio que la OEG demostró con evidencia clara, robusta y convincente las dos infracciones éticas imputadas. Como ya hemos mencionado, el recurrente estaba compelido a **devolver diariamente** los vehículos oficiales a la UPR de Arecibo y **utilizarlos exclusivamente durante su jornada laboral como**

---

[34] Véase, *Informe de la Oficial Examinadora,* a sus págs. 7-8, acápites 21, 23-24, 26-27; además, Exhibits 7-8.

[35] Véase, *Informe de la Oficial Examinadora*, a sus págs. 6-8, acápites 17, 19, 22 y 25.

**rector, para una función pública**. La vasta prueba aportada por la OEG, no refutada, apoyó las determinaciones fácticas consignadas en la *Resolución* recurrida. No se trata de meras conjeturas como se alega, sino de hechos admitidos por el recurrente que establecen con meridiana claridad que utilizó los vehículos oficiales asignados como medio de transporte desde su residencia a su lugar de trabajo, ida y vuelta, para fines privados o en el ejercicio de sus funciones docentes, no vinculadas al puesto de rector. Los ordenamientos jurídicos atinentes expresamente disponen la utilización del vehículo oficial, por parte de un jefe de agencia o funcionario, únicamente para asuntos oficiales y para el ejercicio exclusivo de la gestión pública.

En suma, es forzoso concluir que la OEG demostró con convicción la dualidad de las infracciones a los incisos (b) y (r) del Artículo 4.2 de la Ley Nú.m 1-2012, *supra.* Ello, en observancia a su ley habilitadora y obrando de forma razonable. Sin duda, a base de evidencia clara, robusta y convincente, se probó que el señor Andújar Rojas utilizó propiedad y fondos públicos, para proporcionarse un beneficio privado no permitido por la Ley Núm. 60-2014, *supra,* ni por la Certificación Núm. 35 (2014-2015), *supra.* Específicamente, el señor Andújar Rojas falló al ignorar el ordenamiento legal y no devolver diariamente a la UPR los vehículos asignados y propiedad pública; y en su lugar, trasladarse con fines privados a su residencia, sin tampoco rendir cuentas en una bitácora. Decididamente, la evidencia documental sostuvo la comisión de ambas infracciones, las cuales conllevaron la pérdida de fondos públicos a la UPR de Arecibo por concepto de gastos de peaje y gasolina. Del hecho evidente de que el señor Andújar Rojas no sufragó con sus haberes estos gastos, es razonable colegir que obtuvo también un beneficio proscrito. Los documentos convincentes que obran en el expediente acreditan que el señor Andújar Rojas, al usar los vehículos oficiales Toyota Sienna, Ford Escape y Chevrolet Traverse como medios de transporte privado para viajar, ida y vuelta, cientos de veces desde su lugar de trabajo en la UPR de Arecibo hacia su residencia en Toa Alta, recibió para sí un beneficio personal prohibido por ley y reglamento. Por ende, quedaron configurados

todos los elementos constitutivos de las violaciones administrativas tipificadas en los incisos (b) y (r) del Artículo 4.2 de la Ley Núm. 1-2012, *supra*. En consecuencia, el señor Andújar Rojas debe restituir al erario los fondos de los que se benefició y satisfacer las multas impuestas, esto es, un total de $9,382.86.

## IV.

Por los fundamentos antes expuestos, los cuales hacemos formar parte de este dictamen, confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones